UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

BOBBY FELIX SIMMONS                    CIVIL ACTION NO. 09-663

VERSUS                                 JUDGE ELIZABETH ERNY FOOTE

CITY OF MAMOU, ET AL                   MAGISTRATE JUDGE PATRICK J. HANNA

## MEMORANDUM RULING

Before this Court is a Motion for Summary Judgment filed on behalf of the Defendants, the Town of Mamou; Chief Greg Dupuis, individually and in his official capacity as Chief of Police of the Town of Mamou; Officer Todd Ortis, individually and in his official capacity as a police officer for the Town of Mamou; Officer Albert Moore, individually and in his official capacity as a police officer for the Town of Mamou;[1] Officer David Charlie, individually and in his official capacity as a police officer for the Town of Mamou; and Officer Lucas Lavergne, individually and in his official capacity as a police officer for the Town of Mamou (collectively "Defendants"). [Record Documents 37, 55]. Defendants contend summary judgment should be entered in their favor and that Plaintiff's claims of false arrest, interference with the exercise of free speech, failure to release on bond and failure to provide adequate medical care in violation of the First, Fourth, Fifth and Fourteenth Amendments should be dismissed in their entirety. See id. Plaintiff opposes

---

[1] Plaintiff has represented to the Defendants and to the Court that he does not intend to pursue any claims against Officer Albert Moore nor does he intend to pursue any claims for an alleged violation of his Fifth Amendment rights. See Record Documents 46, 57. Because Plaintiff consents to the dismissal of these claims, the Court's ruling will not address the merits of these claims.

this motion.  See Record Documents 41, 57.  For the reasons stated herein, Defendants'

motion for summary judgment is **GRANTED IN PART** and **DENIED IN PART**.

## FACTUAL BACKGROUND

On May 19, 2008, Plaintiff, Bobby Simmons, a former police officer, contacted the

Ville Platte Gazette ("the Gazette") via email inquiring as to why the Gazette had not run

a story regarding the alleged arrest of Greg Dupuis, Chief of Police of the Town of Mamou

("Dupuis"), and Dupuis' alleged interference with the Louisiana State Police, who were

subjecting one of Dupuis' female officers to DUI testing.[2]  See Record Document 62-1, p.

25. The Gazette responded to Plaintiff stating that it had confirmed a female Mamou police

officer had been cited by State Police while off-duty; however, the newspaper had been

unable to verify the allegations regarding Dupuis.  Id.   Plaintiff replied to the Gazette,

providing more details regarding the incidents alleged.[3]

---

[2] Plaintiff's email to the Gazette stated:

> who was the mamou police officer (female) that was arrested
> for DUI, what happened to the arrest of Greg Dupuis last night
> or early morning by LSP.  Why is there no story on Greg locing
> the state police out of the room at Mamou PD because they
> would not release his officer.  [sic]

See Record Document 32-1, p. 25.

[3] Plaintiff's reply email to the Gazette stated:

> It was a black female officer, the only one I know of is the
> asst. chief.  Greg locked the door to the DUI machine and
> told the state police it was his f_cking office and get out.
> The suyspect was taken to ville platte PD and ran on the
> machine.  Check the name of black female officers at
> mamou pd including di[patchers and check the log on the

Although the Gazette did not run a story on Dupuis' alleged arrest or his interference with the arrest of his officer, the newspaper's inquiries, along with other rumors allegedly circulating in the community, prompted Dupuis to act.  When the Gazette refused to reveal the source of its information, Dupuis and Officer Todd Ortis ("Ortis") presented the Gazette with a subpoena duces tecum issued by the District Attorney's Office.   See Record Document 60, Joint Exhibit 1.   Upon obtaining the email exchange between Plaintiff and the Gazette editor, Dupuis and Ortis submitted an affidavit executed by Ortis to Judge Thomas Fuselier, District Court Judge for Evangeline Parish.

Based upon the representations made by Ortis in the affidavit, a warrant issued for Plaintiff's arrest on May 21, 2008.  The warrant fixed bond at $1,000.  Ortis and Dupuis faxed the warrant to the Franklin Police Department, which executed the warrant, arrested Plaintiff, and held him for approximately three hours until he was picked up by Mamou Police Department Officer Albert Moore ("Moore").  See Record Document 37-1, Dupuis Deposition, pp. 58-59.  Although Moore was off-duty at the time of Plaintiff's arrest,  Moore was called in to pick up Plaintiff in Franklin (St. Mary Parish) and transport him to Mamou (Evangeline Parish) for booking.  See id.  Moore did so, and Plaintiff was held overnight at the Mamou Police Department.   The next morning, Plaintiff was transported to the Evangeline Parish jail in Ville Platte, Louisiana, where he bonded out.

---

machine at ville platte pd. [sic]

See Record Document 62-1, p. 25.

In an article dated May 27, 2008, which announced Plaintiff's arrest for emailing the

Gazette, Dupuis was quoted as stating:

> I will be actively searching for the person or persons involved
> in this defamatory campaign against me . . . and now it will
> come to an end.
>
> . . .
>
> Anyone with information regarding these unfounded remarks
> can freely contact me at my office at the Mamou Police
> Department or come by my home.  As stated previously, I am
> offering 'personally' $500 for information leading to the people
> responsible for these ridiculous rumors . . .

See Record Document  62-3, p. 71.  Additionally, the Gazette reported that, according to

Ortis, the Mamou Police were actively investigating the matter to uncover additional

sources of the rumor and more arrests would be forthcoming. See id.

## PROCEDURAL POSTURE

On April 22, 2009, Plaintiff commenced this action pursuant to 42 U.S.C. § 1983 ("§

1983") for alleged violations of his First, Fourth, and Fourteenth Amendment rights.  First,

he alleges he was unlawfully arrested and detained for exercising his right to free speech.

He also claims that his family made repeated attempts to post his bond, which had been

set on the arrest warrant; however, the officers in Franklin and Mamou refused to accept

bond.  Finally, Plaintiff, who suffers from a terminal breathing condition, contends that he

repeatedly requested, but was denied, adequate medical care, including prescribed

medication and treatment from a nebulizer and/or rescue inhaler, while in Defendants'

custody.  See Record Documents 1, 46.  Defendants now seek summary judgment in their

favor and dismissal of Plaintiff's claims in their entirety.[4]  See Record Documents 37, 55.

Defendants' motion is based on their assertions that they are entitled to qualified immunity

for the claims against them in their individual capacities, and that under <u>Monell v. Dep't of</u>

<u>Soc. Servs. of City of New York</u>, 436 U.S. 658, 690 at n.55, 98 S.Ct. 2018, 2036, 56 L.Ed.2d

611 (1978), there is no evidence to support the claims against the Town of Mamou or the

Defendants in their official capacities.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil

Procedure "if the pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any, show that there is no genuine issue as to any material

fact and that the moving party is entitled to a judgment as a matter of law." <u>Celotex Corp.</u>

<u>v. Catrett</u>, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).  Rule 56(c)

---

[4]The Court denied Defendants' original summary judgment motion finding that the motion could not be ruled on as filed, as Defendants failed "to satisfy their burden of showing that they are entitled to the relief requested."  Record Document 44. Thereafter, in accordance with the Court's order, the parties filed a detailed outline of the claims and defenses asserted in this matter.  See Record Documents 46, 48. Plaintiff's outline identified the basis in law upon which each claim is founded, listed all elements required to prove those claims, provided a brief recitation of the facts he intends to use to support his claims, cited relevant jurisprudential authority, and identified the specific remedies he seeks to recover if he is successful in proving the merits of his claim.  See Record Document 46.  Defendants responded to Plaintiff's outline and specifically identified the facts and/or arguments they will use to rebut Plaintiff's claims, and stated each affirmative defense asserted in response to Plaintiff's claims.  See Record Document 48.  Defendants then filed a motion for reconsideration of their motion for summary judgment, along with a memorandum clarifying the defenses applicable for each defendant.  See Record Document 51.  Defendants' motion for reconsideration was granted, and the motion for summary judgment was placed back on the docket for the Court's consideration.  See Record Document 56.

"mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Id., 477 U.S. at 322, 106 S. Ct. at 2552.  If the party moving for summary judgment fails to satisfy its initial burden of demonstrating the absence of a genuine issue of material fact, the motion must be denied, regardless of the nonmovant's response.  Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).  If the motion is properly made, however, Rule 56(c) requires the nonmovant to go "beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial."  Wallace v. Texas Tech. Univ., 80 F.3d 1042, 1047 (5th Cir. 1996) (citations omitted).  While the nonmovant's burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence, Little, 37 F.3d at 1075,  Wallace, 80 F.3d at 1047, all factual controversies must be resolved in favor of the nonmovant.  Cooper Tire & Rubber Co. v. Farese, 423 F.3d 446, 456 (5th Cir. 2005).

**LAW AND ANALYSIS**

I.     Qualified Immunity.

Section 1983 provides a federal cause of action for the "deprivation of any rights, privileges or immunities secured by the Constitution and laws" against any person acting under color of state law.[5]    Nonetheless, the doctrine of qualified immunity shields

---

[5]Section 1983 does not itself create substantive rights; rather, it merely provides remedies of rights guaranteed to citizens by the United States Constitution or other

government officials from liability for claims against them in their individual capacity "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[6]  Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).  Because qualified immunity is "an immunity from suit rather than a mere defense to liability, . . . it is effectively lost if a case is erroneously permitted to go to trial."  Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985).  Consequently, qualified immunity questions should be resolved at the earliest possible stage in litigation.  See Hunter v. Bryant, 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (per curiam).

In Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), the Supreme Court held that a court ruling upon the issue of qualified immunity must apply a two-step analysis.  First, the Court must determine whether "the facts alleged show the officer's conduct violated a constitutional right."  Id.  Second, if a violation has been established, the Court must determine whether the officer's actions were objectively reasonable in light of clearly established law at the time of the conduct in question.  See

---

federal laws.  See Graham v. Connor, 490 U.S. 386, 393-94, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989);  City of Oklahoma City v. Tuttle, 471 U.S. 808, 816, 105 S.Ct. 2427, 2432, 85 L.Ed.2d 791 (1985).

[6]The doctrine of qualified immunity serves to shield government officials from harassment, distraction, and liability when they perform their duties reasonably, and applies regardless of whether the official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact."  Pearson v. Callahan, 555 U.S. 223, 129 S.Ct. 808, 815, 172 L.Ed.2d 565 (2009) (quoting Groh v. Ramirez, 540 U.S. 551, 567, 124 S.Ct. 1284, 157 L.Ed.2d. 1068 (2004) (Kennedy, J., dissenting)).

id.; Freeman v. Gore, 483 F.3d 404, 411 (5th Cir. 2007).[7]  "The touchstone of this inquiry is whether a reasonable person would have believed that his conduct conformed to the constitutional standard in light of the information available to him and the clearly established law." Goodson v. Corpus Christi, 202 F.3d 730, 736 (5th Cir. 2000).  If officers of reasonable competence could disagree as to whether the plaintiff's rights were violated, the officer's qualified immunity remains intact.  See Tarver v. City of Edna, 410 F.3d 745, 750 (5th Cir. 2005)(citing Malley v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)(holding the qualified immunity standard "gives ample room for mistaken judgments" by protecting "all but the plainly incompetent or those who knowingly violate the law."))  The question of whether an official's conduct was objectively reasonable is a question of law to be decided by the Court.  See Evett v. DETNTFF, 330 F.3d 681, 688 (5th Cir. 2003)(citing Mangieri v. Clifton, 29 F.3d 1012, 1016 (5th Cir. 1994)).

A.    Fourth Amendment Unlawful Arrest.

Plaintiff alleges a Fourth Amendment violation against Dupuis and Ortis.  Citing Baker v. McCollan, 443 U.S. 137, 99 S.Ct. 2689 (1979), Dupuis and Ortis seek dismissal of

---

[7]In Pearson, the Supreme Court held that while the sequence set forth in Saucier is often appropriate, it is no longer mandatory.  Instead, lower courts "should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Id.  In this matter, the Court finds it appropriate to follow established sequence and determine whether the facts alleged show the officers' conduct violated a constitutional right.  Deciding this issue at the outset will assist the Court in determining the specific constitutional standards applicable to the officers' conduct and whether the officers' actions were objectively reasonable in light of those standards.  See Wilson v. Layne, 526 U.S. 603, 609, 119 S.Ct. 1692, 1697, 143 L.Ed.2d 818 (1999); Graham, 490 U.S. at 394, 109 S.Ct. 1865.

the unlawful arrest claim based upon the existence of the facially-valid warrant.  Dupuis and Ortis claim qualified immunity from liability in their individual capacities.  Plaintiff contends that Dupuis and Ortis acted unreasonably in obtaining the warrant in the absence of probable cause.  Furthermore, Plaintiff argues that the arrest warrant is willfully misleading because it states the Plaintiff "intentionally" made false allegations; however, there was no evidence that the allegations were false or that Plaintiff knew them to be false.  See Record Documents 46, 57.  In order to determine whether Defendants Dupuis and Ortis are immune from individual liability for the violations alleged against them, the Court must consider whether Dupuis and Ortis acted reasonably in procuring the arrest warrant given the constitutional rights of the Plaintiff, which must have been clearly established at the time of the arrest.

By virtue of the Fourteenth Amendment, "the Fourth Amendment requires the States to provide a fair and reliable determination of probable cause as a condition for any significant pretrial restraint of liberty." Baker, 443 U.S. 137, 142, 99 S.Ct. 2689, 2694 (1979); Gerstein v. Pugh, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975).  "Probable cause" is defined as the existence of "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." Michigan v. DeFillippo, 443 U.S. 31, 37, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979); Club Retro, L.L.C. v. Hilton, 568 F.3d 181, 204 (5th Cir. 2009). Probable cause must be based on facts known to the officer at the time of the arrest; post-

hoc justifications based on facts later learned cannot support an earlier arrest. Club Retro, 568 F.3d at 204; Evett v. DETNTFF, 330 F.3d 681, 688 (5th Cir. 2003).

It is axiomatic that when an arrest is effectuated pursuant to a valid warrant, the existence of probable cause has been determined by a neutral and detached magistrate and the requirements of the Fourth Amendment satisfied. See id. In such cases, a plaintiff is precluded from asserting a Section 1983 claim for "false arrest" because no constitutional violation has occurred. Baker, 443 U.S. at 142, 99 S.Ct. at 2694 ("The Constitution does not guarantee that only the guilty would be arrested. If it did, Section 1983 would provide a cause of action for every defendant acquitted–indeed, for every suspect released."); see also, Brown v. U.S. Postal Serv., 338 F.App'x. 438, 441 (5th Cir. 2009) ("Where based on a valid warrant, 'the arrest is simply not a false arrest' and cannot form the basis of a constitutional violation."); Smith v. Gonzales, 670 F.2d 522, 526 (5th Cir. 1982). As the Fifth Circuit has recognized, "an arrest made under authority of a properly issued warrant is simply not a 'false' arrest, it is a 'true' or valid one." Rodriguez v. Ritchey, 556 F.2d 1185, 1193 (5th Cir. 1977). Moreover, if the facts supporting a warrant or indictment are put before an intermediary such as a magistrate or grand jury, the intermediary's independent decision breaks the causal chain and insulates the initiating party. See Hand v. Gary, 838 F.2d 1420, 1427 (5th Cir. 1988); Rodriguez, 556 F.2d at 1193. "The rationale underpinning this rule is apparent, with the focus being upon the independent decision making process of a court to impartially and objectively evaluate the underlying facts and then to reach its own decision." Morris v. Dearborne, 181 F.3d 657, 673 (5th Cir. 1999).

Of course, the foregoing principles presume the existence of a valid warrant issued by a neutral magistrate who relies upon an officer's sworn testimony.  The Fifth Circuit has cautioned that the chain of causation is broken only where all the facts known to the officer at the time of the arrest are presented to the judicial intermediary; and the malicious motive of the officer procuring the arrest warrant does not lead him to withhold any relevant information.  See Murray v. Earle, 405 F.3d 278, 292-93 (5th Cir. 2005); Morris, 181 F.3d at 673; Hand, 838 F.2d at 1427.   Thus, to invoke the shield of the warrant, the swearing officer must present all relevant facts known at the time.

The affidavit executed by Ortis in support of the warrant states, in pertinent part:

> . . . on or about May 19, 2008 through May 20, 2008:
>
> Count 1: Did willfully and unlawfully violate R.S. 14:47 DEFAMATION, in he did made expressions and publications affecting the integrity of Greg Dupuis, Chief of Police of Mamou, Louisiana, these unfounded allegations are a personal attack on Chief Greg Dupuis due to the fact that the Mamou Police Department was instrumental in the an undercover operation resulting in the arrest of Bobby Felix Simmons.  The allegations made by Bobby Felix Simmons intentionally made these allegations with the intent to deprive him of public confidence or social intercourse. [sic]

See Record Document 37-1, Exhibit 3, p. 105.

As a preliminary observation, Louisiana Revised Statute 14:47 was, in large part, declared unconstitutional by the United States Supreme Court in Garrison v. State of Louisiana in 1964.  Garrison v. State of Louisiana, 379 U.S. 64, 85 S.Ct. 209, 13 L.Ed.2d 125 (1964).  In Garrison, the Court held that the Louisiana criminal defamation statute unconstitutionally penalized two types of speech:  (1) true statements made with actual

malice and (2)  false statements made with ill-will where a showing of the speaker's knowledge of their falsity or reckless disregard for their falsity was not required.  See id. at 78, 85 S.Ct. at 217.    The courts of Louisiana have since recognized the unconstitutionality of the statute in certain circumstances.  See State v. Defley, 395 So. 2d 759 (La. 1981); State v. Snyder, 277 So. 2d 660 (La. 1973).  Thus, in order to comport with Garrison, a defamatory statement must not only be false, it must also be made with knowledge of its falsity or in reckless disregard of whether it is true or false.  As officers charged with enforcing Louisiana law, Defendants are presumed to know the law.  See Rykers v. Alford, 832 F.2d 895, 898 (5th Cir. 1987)(holding appropriate presumption that officer-affiant had knowledge of state court decision which barred application of a state criminal statute in certain situations).

The affidavit executed by Officer Ortis is troubling to the Court.  First, Ortis and Dupuis[8] withheld from Judge Fuselier the substantive information regarding the nature of the statements made by Plaintiff.  The only evidence against Plaintiff was Plaintiff's email to a local journalist inquiring as to why a story had not been run.[9]  This fact was withheld. Instead, Defendants made conclusory statements that Plaintiff violated a state statute

---

[8] Dupuis testified that both he and Ortis took part in obtaining a subpoena duces tecum and presenting the affidavit executed by Ortis to Judge Fuselier; however, none of the remaining defendants have been implicated in this process.  See Record Document 37-1, Dupuis Deposition, pp. 42, 52].

[9] Defendants concede that Plaintiff's email to the Gazette editor formed the entire basis of his arrest and that no investigation into Plaintiff's conduct was done by Defendants beyond procuring the emails, nor do the Defendants have any evidence that Plaintiff communicated the statements to anyone other than the Gazette editor.  See Record Document 62-1, Ortis Deposition, pp.40-41.

(which had been declared unconstitutional as applied in circumstances nearly identical to the case at bar over forty years prior to Plaintiff's arrest) when he made "unfounded" allegations.   Contrary to this sworn assertion, Dupuis and Ortis both knew at the time of Plaintiff's arrest that there was truth to the statement that a female officer had been cited by state police. See Record Document 62-1, Dupuis Deposition, p. 64; see also Record Document 62-1, Ortis Deposition, p. 46.  However, they withheld the knowledge that there was truth to some of the statements made by Plaintiff.  Furthermore, evidence submitted by Plaintiff shows that there may have been some truth to the statement that Dupuis retaliated for the citation of one of his officers by removing the State Police intoxilyzer from the Mamou Police Department facilities.[10]  While there is no evidence that Dupuis has ever been stopped for suspicion of driving under the influence, there was likewise no evidence that Plaintiff knew this to be false or had a reckless disregard for whether it was false.

While this "reckless disregard of truth" standard is not spelled out in the language of the criminal defamation statute, the United States Supreme Court and the courts of Louisiana have recognized the necessity of such a showing in order for the application of the statute to comport with constitutional mandates.  The Court finds this to be well-settled law.  Based upon a review of the summary judgment record, there was not a scintilla of

---

[10] The log maintained by the Louisiana State Police of tests conducted on the breathalyzer maintained at the Mamou Police Department indicate that a female Mamou officer was the last person tested prior to the machine mysteriously being put out of use until the State Police removed the machine some weeks later, per the request of Chief Dupuis.  See Dupuis Deposition, Record Document 62-3.  Trooper Kerry Johnson testified that when she arrived at the Mamou Police Department, the breathalyzer was unhooked from use and placed in a closet.  See Record Document 62-2, Johnson Deposition, p. 40.

evidence which suggested Plaintiff knew the remaining allegations to be false or made them in reckless disregard of whether they were true or false.[11]  This, too, was withheld. Instead, the grossly misleading characterization of the allegations as "unfounded" was substituted.

Secondly, the only factually-specific information provided to Judge Fuselier was speculation that Plaintiff's motive for making the statements was retaliation for the Mamou Police Department's "instrumental" role in Plaintiff's arrest.  Ortis testified in his deposition that he and Dupuis were present when a law enforcement officer from another jurisdiction arrested Plaintiff on drug charges.   Contrary to the assertion that the Mamou Police Department was "instrumental" in the investigation, Ortis testified that neither he nor Dupuis were involved in the investigation or Plaintiff's arrest, but rather were simply "there".  Record Document 62-1, Ortis Deposition, pp. 45-46.

The evidence before the Court does not support a qualified immunity defense or summary judgment dismissal of Plaintiff's claim of false arrest.   To the contrary, the affidavits and the deposition testimony of Dupuis and Ortis illustrate that these Defendants first relied on an unconstitutional statute, withheld relevant facts and evidence from Judge Fuselier, and misrepresented the nature of Plaintiff's communication with the Gazette, the statements contained therein, and possibly the nature of the Mamou Police Department's

---

[11] The Court notes Plaintiff's correspondence with the newspaper was in the form of an inquiry, and the record is void of any showing that Plaintiff published the information to anyone in the community.  To the contrary, Plaintiff's email correspondence evidences an intent to provide a journalist with information whereby the journalist would be equipped to confirm whether certain rumors were true or not, all prior to the publication of the allegations.

role in the prior investigation of Plaintiff, all in order to obtain an arrest warrant.  Thus, as to Defendants Ortis and Dupuis, the warrant cannot and does not provide any shield from liability for the arrest which followed. See Murray, Morris and Hand, supra; see also Rykers, 832 F.2d at 898 (holding that an officer who swears out an affidavit on which an arrest warrant is based cannot appeal to the facial validity of the arrest warrant nor the insulation given by the magistrate's independent decision-making when relevant facts are withheld). Finally, the Court notes that the Defendants' apparent recognition of the need to mislead the district judge in order to obtain the warrant may itself constitute evidence of the unreasonableness of their actions in light of Plaintiff's clearly established right to speak freely without reprisal from law enforcement.

      B.    <u>First Amendment Freedom of Speech.</u>

      Plaintiff alleges Dupuis and Ortis violated his First Amendment rights by arresting him in retaliation for exercising his right to free speech.  Defendants contend that the arrest was based upon a valid warrant, and, therefore, lawful.  Defendants argue that a lawful arrest cannot be the basis of a First Amendment violation, regardless of Plaintiff's ultimate guilt or innocence.

      To prevail on a First Amendment retaliation claim, a plaintiff must prove that: (1) he was engaged in constitutionally protected activity; (2) the defendants' actions caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) the defendants' adverse actions were substantially motivated against the plaintiff's exercise of constitutionally protected conduct.  See Izen v. Catalina, 398 F.3d 363, 367 (5th Cir. 2005); Keenan, 290 F.3d at 258.  There can be no

doubt that the freedom to criticize public officials, including police officers, is unequivocally protected by our Constitution.  It is likewise well-settled that the First Amendment prohibits government officials from taking action against individuals in retaliation for exercising this protected right.  See Keenan v. Tejeda, 290 F.3d 252, 258 (5th Cir. 2002); Colson v. Grohman, 174 F.3d 498, 508 (5th Cir. 1999); see also, Crawford-El v. Britton, 523 U.S. 574, 588 n.10, 118 S.Ct. 1854, 1592, 140 L.Ed.2d 759 (1998) ("retaliation offends the Constitution [because] it threatens to inhibit exercise of the protected right"); Perry v. Sindermann, 408 U.S. 593, 597, 92 S.Ct. 2694, 2697, 33 L.Ed.2d (1972) (recognizing that if government officials were permitted to impose penalties in retaliation for an individual's speech, the government would, in effect, be able to suppress or inhibit the individual's exercise of protected speech and produce indirectly a result which it could not command directly).  Criminal arrest and prosecutions in retaliation for the exercise of free speech constitute "official action offending the Constitution," and entitle those violated to recovery. Hartman v. Moore, 547 U.S. 250, 256, 126 S.Ct. 1695, 1701, 164 L.Ed.2d 441 (2006).

The Court notes that not all instances of detention by police would chill a person of ordinary firmness from continuing to engage in protected activity.  See Benson v. McKinney, 2009 WL 1033172 (W.D.La. Apr. 16, 2009)(holding that where there was no evidence presented of threats to plaintiff, a brief traffic stop resulting in a speeding ticket, for which probable cause existed, would not deter a person of ordinary firmness, and in fact did not deter plaintiff's continued criticism of defendants).  However, in the present case, a citizen was handcuffed, arrested and held overnight for sending a private email communication to a local newspaper which informed the paper of possible misconduct of

a pubic official.  There can be no doubt that such a communication constitutes protected speech in this country.  Plaintiff testified that at different points of his detention he was chained to the wall, placed in leg irons, and isolated in the "coldest cell in the jail."  See Record Document 37-1, Plaintiff's Deposition.  Therefore, the circumstances surrounding Plaintiff's arrest and detention are unlike those presented by a brief traffic stop, and could certainly constitute retaliatory conduct that would chill a person of ordinary firmness.

The only issue remaining is whether the Defendants, when viewing the evidence in a light most favorable to Plaintiff for purposes of summary judgment adjudication, were substantially motivated by retaliation for Plaintiff's speech.  The Court finds the Gazette article reporting Plaintiff's arrest, as well as the deposition testimony of Dupuis and Ortis regarding their pursuit of other citizens "caught" criticizing Dupuis, certainly raise genuine issues of material fact regarding the motivation behind the officers' actions in effecting the arrest of Plaintiff. See Record Document 62-3, p. 70, "Mamou Police arrest one after rumors suggest police chief's activities are criminal."

For the foregoing reasons, Defendants Dupuis and Ortis, in their individual capacities, are not entitled to qualified immunity from Plaintiff's claim of violation of his First Amendment right to freedom of speech.  The evidence does not support summary judgment dismissal of this claim.

    C.    Fourteenth Amendment Denial of Due Process.

        1.    Failure to Release on Bond

Plaintiff alleges Defendants Dupuis, Charlie and Lavergne violated his Fourteenth Amendment right to due process of law by refusing to allow him to post bond.  See Record

Document 62.   In order to determine whether these Defendants are immune from individual liability for the violations alleged against them, the Court must consider whether they acted reasonably in detaining Plaintiff overnight despite his bond having been set by Judge Fuselier.

Plaintiff contends that his transfer to and detention in Mamou was unreasonable and punitive given that his bond had been set.  Plaintiff cites <u>Augustus v. Roemer</u>, 771 F.Supp. 1458, 1465 (E.D. La. 1991), for the proposition that "once (bail) determination is made and bail has been set, the accused has a fundamental due process right not be deprived of the opportunity to exercise the option to post bail and be released."  Defendants deny that Plaintiff was ever prevented from posting bond.  Relying on Louisiana Code of Criminal Procedure Article 207, Defendants argue that Plaintiff was not released on bond in Franklin (St. Mary Parish) because booking procedure required him to be transported to Mamou (Evangeline Parish) for booking.  Defendants contend that Plaintiff was held overnight until another officer came on duty, then transported again to Ville Platte (Evangeline Parish) for another booking because he was charged with a state offense.  In Ville Platte, Plaintiff was properly released when he made bail.

Louisiana Code of Criminal Procedure Article 207 provides:

> When an arrest under a warrant occurs in a parish other than that in which the alleged offense was committed, the person arrested shall be booked and imprisoned in the parish where he was arrested until he gives bail **or** is transferred to the parish where the offense is alleged to have been committed.  A person awaiting transfer shall not be detained in custody in the parish of his arrest for a longer period than ten days.

<u>Id.</u> (emphasis added).

Contrary to Defendants' argument, Article 207 did not mandate Plaintiff's transfer to, and consequential detention in, Mamou.  Rather, it specifically allows booking and detention in the parish of arrest, for a maximum of ten days, until the arrestee posts bond or is transferred to the parish where the alleged offense was committed.  Plaintiff was held in St. Mary Parish (the parish of arrest) for only three hours; therefore, his transfer to Evangeline Parish was not warranted due to the accrual of the maximum time limit provided in Article 207.  Defendants have not presented the Court with any statutory or regulatory provisions which would support the transfer to Mamou, a procedure which contradicts Defendants' own testimony that booking in Ville Platte, the parish seat of Evangeline Parish, was necessary given the charge against Plaintiff.  In any event, the deposition testimony of the Chief of Police of Franklin[12] establishes that local departmental policy on this issue varied:

> Q:   Okay.  So when you receive [an arrest warrant from another parish], y'all look to this portion at the bottom that talks about bond?
>
> A:   We contact them to see if they're going to come pick them up or they want them to bond out here.
>
> Q:   And that's just within the discretion of whoever should be working?

---

[12] In opposition to Defendants' Motion for Summary Judgment, Plaintiff offers an excerpt of the deposition testimony of "Franklin Parish Sheriff McGuire."  The excerpt provided does not afford the Court verification of the deponent's job title; however, it is the Court's understanding that Plaintiff's arrest took place in the town of Franklin which is located in St. Mary Parish.  Additionally, the Court notes that Sabria McGuire is the Chief of Police of the Franklin Police Department, which executed the arrest warrant of Plaintiff.

A:    Whoever, yeah.  Some agencies let them bond here, we send them the bond information.  Some agencies allow them to do cash bonds which we receive money orders for that and we send them to the agency. It just depends on – if we arrest someone for Lafayette, they come get them.  They don't allow them to bond here, but Iberia Parish because they're in our 16th Judicial area, we arrest someone on a warrant on Iberia, they usually let them bond out here...It just depends where – what the agency's protocol is.

See Record Document 62-2, McGuire Deposition, pp. 42-43.  Chief McGuire was unfamiliar with the policy of the Mamou Police Department; however, Defendants Dupuis and Lavergne testified that it was the Mamou Police Department's Policy to require an arrestee be transferred to Mamou for booking prior to any transfer to Ville Platte.  See Record Document 62-3, Supplemental Dupuis Deposition, pp. 50-58; see also Record Document 42-4, Lavergne Deposition, p. 24.  Defendant Lavergne described following normal booking procedure when Plaintiff was brought to Mamou and could not recall whether Plaintiff questioned him regarding bond.  See Lavergne Deposition, Document 42-4, p. 21.   The deposition testimony of Plaintiff and Mrs. Simmons, however, was that officers in Franklin, as well as Defendants Moore, Charlie and Lavergne, all advised Plaintiff and Mrs. Simmons that bond would not be accepted because Defendant Dupuis wanted Plaintiff in jail and could hold him for up to three to five days. See Record Document 37-1, Simmons Deposition, pp. 142-143; see also Record Document 62-2, Mrs. Simmons' Deposition, p. 10.

Additionally, the Court finds the notations on Plaintiff's booking card troubling.  Under "Offense," the notation "Hold for investigation" was made.  Also, under "Bond,"

"None" appears, despite Plaintiff's bond having been set with the issuance of the arrest warrant.  See Record Document 62-2, "Mamou Police Department Booking Card, p. 45.

The Court finds that, as a matter of law, refusal to accept bond, which had been set by a court, from a pre-trial detainee because the crime of which he is accused offended the police chief, is objectively unreasonable in light of clearly established law.  However, genuine issues of fact exist as to whether Defendants Lavergne and Charlie actually refused Plaintiff's bond because Defendant Dupuis directed them to do so.  Such a determination requires the Court to make credibility determinations which are inappropriate at the summary judgment stage.  For the aforementioned reasons, the Court finds genuine issues of material fact exist as to Plaintiff's claim that Defendants unlawfully detained him in violation of his Fourteenth Amendment Due Process rights.  Accordingly, the Defendants are not entitled to qualified immunity at this stage.

### 2.    Failure to Provide Adequate Medical Care

Plaintiff has asserted claims of Fourteenth Amendment violations against Defendants Dupuis, Lavergne, and Charlie for failure to provide adequate medical care to him while in Defendants' custody as a pre-trial detainee.  Plaintiff's claims against Defendants Lavergne and Charlie, who were on duty at the Mamou Police Department the night Plaintiff was held, are asserted against the Defendants in their individual and official capacities for the alleged deliberate indifference demonstrated to Plaintiff's serious medical risk.  Plaintiff's claim against Defendant Dupuis, who was not present during Plaintiff's detention, is asserted against Dupuis in his individual and official capacity for maintaining a jail without

medical staff, failing to supervise and train his employees and/or instructing them to withhold medical treatment from Plaintiff.

It is well-established that "pretrial detainees" have a fundamental right under the Due Process Clause of the Fourteenth Amendment to be provided "with basic human needs, including medical care." Hare v. City of Corinth, Miss., 74 F.3d 633, 650 (5th Cir. 1996) (en banc).  In order to establish a constitutional violation of failure to provide reasonable medical care, Plaintiff must prove that the Defendants acted with "subjective deliberate indifference" to his need for medical care. Scott v. Moore, 114 F.3d 51, 54 (5th Cir. 1997) (emphasis in original).  Deliberate indifference requires proof that:  (1) the officer was aware of facts from which an inference of substantial risk of serious harm could be drawn; (2) the officer actually drew that inference; and (3) the officer's response indicates the officer subjectively intended that harm occur.  See Thompson v. Upshur County, TX, 245 F.3d 447, 458-59 (5th Cir. 2001) (citing Hare, 74 F.3d at 643, 649-50). "Deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." Id.; see also, Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 410, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997) ("deliberate indifference" is a "stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action.").

The undisputed testimony of Officer Moore establishes that Defendants Lavergne and Charlie were aware that Plaintiff was experiencing difficulty breathing at the time he arrived in Mamou and needed medication. See Record Document 62-2, Moore Deposition, p. 5. Plaintiff, however, has not presented sufficient summary judgment evidence to show

Defendants Lavergne and Charlie acted deliberately indifferent to the risk of harm posed.

Mrs. Simmons testified as follows:

> Q:     At any point, did you tell the dispatcher or anybody at the Mamou Police Department, "Here's his nebulizer.  I heard him wheezing.  He might need a breathing treatment"?
>
> A:     No.  I didn't bring the nebulizer in.  I told him he was very sick, he had lung disease, he already missed treatments, and if – and he really needed to have them.
>
> Q:     And what were you told?
>
> A:     Nothing.
>
> Q:     Did you tell them, "I have the medicine with me.  Will you give it to him?"
>
> A:     No.

See Record Document 62-2, Mrs. Simmons Deposition, pp. 8, 12.

Plaintiff gave similar testimony:

> Q:     Okay.  But did [Mrs. Simmons] ever take the portable unit out of the truck and hand it to [Officer Moore] and say, "Here, here's the medicine that Bobby needs to breathe"?
>
> A:     I don't recall.  No.

In viewing this testimony in the light most favorable to Plaintiff, the Court cannot conclude that Plaintiff will be able to bear his burden at trial of proving that Lavergne and Charlie subjectively intended harm to occur by refusing Plaintiff medication.  Indeed, based upon this testimony, Plaintiff cannot show that treatment was refused at all.  Therefore,

Plaintiff cannot sustain a Fourteenth Amendment violation for inadequate medical care, and this claim against Defendants Lavergne and Charlie must be dismissed.

Plaintiff's claim against Defendant Dupuis requires a separate analysis.  Regarding departmental policy for the treatment of an arrestee experiencing breathing difficulty, Dupuis testified that the arrestee would be monitored, dispensed prescribed medication by the dispatcher, and taken to the hospital via ambulance if needed.  <u>See</u> Record Document 37-1, Dupuis Deposition, p. 62.  Plaintiff has not offered any evidence to show that this procedure is inadequate.  Likewise, there is no evidence to substantiate allegations that Defendant Dupuis ordered the intentional withholding of medical treatment from Plaintiff.

Additionally, Plaintiff has not shown that the delay in receiving medication or a breathing treatment exacerbated his medical condition.  <u>See</u> Record Document 42-4, Ingraldi Deposition, pp. 54-55; <u>see also</u> Record Document 42-4, Ardoin Deposition, p. 80. Indeed, Plaintiff concedes that there was no need for him to seek further medical attention at the hospital.  The Court finds that Plaintiff did not suffer a cognizable injury sufficient to establish a violation of his Fourteenth Amendment right to reasonable medical care.  <u>See</u> <u>e.g.</u>, <u>Claudet v. Jones</u>, 2010 WL 4365512, *4-5 (E.D. La. Oct. 27, 2010) (finding that plaintiff's back, neck, shoulder and chest pain resulting from the alleged excessive force incident did not present a "serious medical condition"); <u>Gilbert v. French</u>, 665 F.Supp.2d 743, 760 (S.D. Tex. Oct. 19, 2009) (holding that plaintiff could not establish a constitutional violation in the absence of any evidence showing he was at risk of his medical condition worsening as a result of his detention); <u>Parker v. Doty</u>, 2009 WL 804098, *2 (N.D. Tex. Mar. 25, 2009) ("While Plaintiff may have endured an increased level of back pain without

his medication, the pain was temporary, lasting no more than a day, and as such, does not rise to the level of substantial harm."); Morgan v. McDonald, 2007 WL 1428669, *3 (W.D. La. Mar. 27, 2007) (holding that an actionable claim for a delay in medical care requires plaintiff to show that he in fact suffered "serious harm"); Neubert v. Medical Adm'r, 2006 WL 3478732, *5 (N.D. Tex. Dec. 1, 2006) (finding that plaintiff provided "no evidence of measurable, lasting, substantial harm for which 'mere delay' in treatment would justify recompense").  Therefore, this claim against Defendant Dupuis must be dismissed.

II.   Municipal Liability.

Plaintiff's claims against the Town of Mamou (the "Town") and the officers in their official capacities are based on the same alleged constitutional violations asserted against the officers individually, that is, violations of the First, Fourth, and Fourteenth Amendments.  However, it is well-established that a local government agency cannot be held liable for Section 1983 claims under a theory of respondeat superior.[13]  Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 694, 98 S.Ct. 2018, 2038, 56 L.Ed.2d 611 (1978); McGregory v. City of Jackson, 335 F.App'x 446, 449 (5th Cir. 2009).  Rather, a local government agency can be held liable only if the plaintiff establishes an official policy or

---

[13]In addition to the claims asserted against the defendant officers in their individual capacities, Plaintiff has asserted claims against Chief Dupuis, Officer Ortis, Officer Charlie, and Officer Lavergne in their official capacities as well as a claim against the Town of Mamou.  See Record Documents 1, 46.  Because official-capacity claims are tantamount to a claim against the local governmental agency of which the officer is an agent, the Court will analyze both Plaintiff's official-capacity claims and claims against the Town of Mamou under the Monell standard for municipal liability.  See Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 690 at n.55, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978).

custom, of which a policymaker can be charged with actual or constructive knowledge, and a constitutional violation whose "moving force" is that policy or custom.[14]  McGregory,335 F.App'x at 448 (citing Rivera v. Houston Indep. Sch. Dist., 349 F.3d 244, 247-49 (5th Cir. 2003)).  An official policy, for purposes of Section 1983 liability, is "[a] policy statement, ordinance, regulation or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority," or, alternatively, "[a] persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy."  Bennett v. City of Slidell, 735 F.2d 861, 862 (5th Cir. 1984) (en banc).  Notably, "a final decisionmaker's adoption of a course of action 'tailored to a particular situation and not intended to control decisions in later situations' may, in some circumstances, give rise to municipal liability under § 1983."  See Bryan County, 520 U.S. at 406, 117 S.Ct. 1382 (quoting Pembaur v. Cincinnati, 475 U.S. 469, 481, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986)).  The plaintiff must also "demonstrate a direct causal link between the municipal action and the deprivation of federal rights."  Bryan County, 520 U.S. at 404, 117 S.Ct. at 1388.

Defendants argue that, at most, Plaintiff can only prove a single incident of the alleged constitutional violations by Defendants.  Citing City of Oklahoma City v. Tuttle, 471

---

[14]"[A] municipal policy may be established by a persistent pattern of conduct as well as by a formal legal declaration."  Richardson v. Oldham, 12 F.3d 1373, 1381-82 (5th Cir. 1994).

U.S. 808, 823, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985) and <u>Fraire v. City of Arlington</u>, 957 F.2d 1268, 1278 (5th Cir.), cert. denied, 506 U.S. 973, 113 S.Ct. 461, 121 L.Ed.2d 371 (1992), Defendants contend that proof of a single incident of unconstitutional activity does not establish the existence of a policy, custom or widespread practice necessary to hold the Town liable under <u>Monell</u>.  Plaintiff, on the other hand, contends that the requirements of <u>Monell</u> are satisfied by demonstrating a policy or decision was made "by an official to whom lawmakers have delegated policy-making authority." <u>Brown v. Bryan County</u>, 219 F.3d 450, 457 (5th Cir. 2000).  Chief Dupuis, Plaintiff argues, is the final policymaker for the Town of Mamou regarding the arrest practices employed by the Mamou Police Department; therefore, his decisions regarding effectuating Plaintiff's arrest give rise to municipal liability.

        The Court finds Defendants' argument unpersuasive.  First, Defendants' reliance on <u>Tuttle</u> and <u>Fraire</u> is misplaced given the factual distinction of the case sub judice. Viewing the facts in the light most favorable to Plaintiff, the decisions and conduct of the Town's policy maker (Chief Dupuis) directly resulted in Plaintiff's arrest and any constitutional violations which followed.   Furthermore, even if a <u>Monell</u> claim can only be established through evidence of an official policy or custom, the public statements made by Defendants Dupuis and Ortis that they would continue arresting anyone caught spreading "rumors" may qualify as such evidence.  <u>See</u> Record Document  62-3, pp. 70-71,"Mamou Police arrest one after rumors suggest police chief's activities are criminal".  For these reasons, the Court finds that Defendants are not entitled to summary judgment dismissing Plaintiff's claims against the Town and the Defendants in their official capacities.

**CONCLUSION**

After careful consideration of the applicable law and evidence submitted, the Court finds that Plaintiff has failed to come forth with evidence which would establish a genuine issue of material fact exists on his claim of inadequate medical care.  Therefore, this claim is **DISMISSED WITH PREJUDICE**.  Further, because Plaintiff does not intend to pursue a claim against Defendant Albert Moore, or any claims for alleged violations of his Fifth Amendment rights, these claims are **DISMISSED WITH PREJUDICE**.  However, the Court holds that Plaintiff has produced evidence sufficient to show genuine issues of material fact exist as to all other claims asserted by Plaintiff herein, precluding qualified immunity and summary judgment in favor of Defendants on those issues. Accordingly, Defendants' Motion for Summary Judgment [Record Documents 37, 55] is hereby **GRANTED IN PART** and **DENIED IN PART**.

THUS DONE AND SIGNED on this 15th day of March, 2012

_____

ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE